3:24-mj-00239

**DISTRICT OF OREGON, ss:**                    **AFFIDAVIT OF JOSHUA BETONTE**

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Joshua Betonte being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Detective Background</u>**

1.       I have been employed as a Task Force Officer by the Drug Enforcement Administration (DEA) since March 2023.  As a DEA TFO, I have been authorized to exercise the powers of enforcement personnel set forth in Title 21, United States Code, Section 878.  My deputization includes the authority to apply for federal search warrants and criminal complaints. My current assignment is at the Portland District Office where I am assigned to a DEA federal task force.  My formal education includes a Bachelor of Science in Criminal Justice.  My formal law enforcement training includes receiving over 500 hours of training as documented by the Department of Public Safety Standards and Training (DPSST) and a 400-hour Basic Police Academy.  I currently possess an Advanced Police Certification.  I have participated in multiple drug investigations involving controlled purchase operations, surveillance, arrests, interdiction, vehicle tracking, cell phone geo-location techniques, trap and trace orders, and Title III wiretaps. I have interviewed and operated informants, executed search warrants, arrested and interviewed subjects involved in the smuggling and distribution of narcotics, conducted physical surveillance, and utilized electronic and video surveillance.  I have also worked with and consulted numerous agents and law enforcement officers who have investigated drug trafficking offenses.

2.       I submit this affidavit in support of a criminal complaint and arrest warrant for **Melvin Isaid MIRALDA CRUZ** (**MIRALDA**), dob 9/xx/2002, and **Pablo Marin AGUILERA** (**AGUILERA**), dob 6/xx/1975, for committing the felony offenses of engaging in a conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl, a Schedule II

**Affidavit of Joshua Betonte**                                                        **Page 1**

controlled substance; and, possession with intent to distribute 400 grams or more of fentanyl, a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846 (the Target Offenses).

3.    This affidavit is intended only to show that there is sufficient probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Target Offenses

4.    Title 21, United States Code, Section 841(a)(1) makes it a crime to knowingly or intentionally distribute or possess with intent to distribute a controlled substance.

5.    Title 21, United States Code, Section 841(b)(1)(A) provides that if someone knowingly or intentionally distributes or possesses with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl they are subject to a maximum term of life imprisonment, a potential mandatory minimum sentence of 10 years' imprisonment, a fine of up to $10 million, and a 5-year term of supervised release.

6.    Title 21, United States Code, Section 846 makes it a crime to conspire to distribute and possess with intent to distribute a controlled substance.

## Statement of Probable Cause

7.    The Drug Enforcement Administration, Portland District Office Group D-51, in conjunction with task force agents and officers with the Washington County Sheriff's Office

**Affidavit of Joshua Betonte**                                                      **Page 2**

(WCSO) Westside Interagency Narcotics (WIN) team, Clackamas County Inter-agency Task Force (CCITF), Tigard Police Department ("TPD"), WCSO, and Sherwood Police Department ("SPD"), assigned to DEA led federal task force D-51, (hereinafter collectively referred to as "Investigators") are investigating a Honduras based Transnational Criminal Organization (TCO) with cells operating in Oregon and California.  During the course of the investigation, Investigators identified **MIRALDA** as being a mid-level fentanyl dealer operating in Portland, Oregon.  **MIRALDA** was identified as living at 425 NE Webster Street in Portland, Oregon (the Subject Premise).

8.    On October 28, 2024, Investigators applied for and were granted federal search warrants for the Subject Premise; the persons of **MIRALDA** and Juan Ramon MIRALDA CUEVAS (CUEVAS); and, two vehicles.

### Execution of the Search Warrant at the Subject Premise

9.    On October 29, 2024, members of the Portland Police Bureau (PPB) Special Emergency Reaction Team (SERT) executed the search warrant at the Subject Premise.  During the execution of the warrant, PPB SERT detained **MIRALDA**, **AGUILERA**, and a juvenile male inside the property.  The suspects remained in police custody while investigators searched the residence.  Throughout the residence Investigators located approximately 3.4 kilograms of fentanyl (in both powder and pill form) and, what we estimate, is over $10,000 in U.S. Currency. The total amount of fentanyl powder weighed approximately 3.3 kilograms and the fentanyl pills (counterfeit M30 pills manufactured with fentanyl) weighed approximately 98.71 grams.

10.    The fentanyl powder was found throughout the residence to include being hidden in the ceiling tiles, a baking pan in the utility room, and within various plastic grocery sacks that were found in the residence, including within the bedrooms.  Five containers of Super Mannitol

**Affidavit of Joshua Betonte**                                                    **Page 3**

were found in the kitchen.  Inside the utility room of the residence Investigators found additional containers of Super Mannitol and instruments for mixing fentanyl to include vice clamps, die cut squares, baking pans, blenders, and mixing bowls.  In total, within the residence, Investigators found 14 containers of Super Mannitol.  I know that fentanyl dealers regularly mix Super Mannitol with fentanyl to cut their product which has the effect of increasing the volume of what they are selling but also decreases the purity of it.  The die cut square found in the utility room appeared to have white powder residue on it.  One of the baking dishes found in the utility room had chunks of powdered fentanyl inside of it.  Samples of the suspected fentanyl powder were subject to a field test and returned positive results for fentanyl, a Schedule II controlled substance.  I know that field tests are a reliable means to sample controlled substances.  Pictures of the seized fentanyl, Super Mannitol, and cash are below:

 

**Affidavit of Joshua Betonte**                                                                 **Page 4**





**Interviews with MIRALDA and AGUILERA**

11.    Following the detention of **MIRALDA** and **AGUILERA**, and the search of the Subject Premise, Investigators interviewed **MIRALDA** and **AGUILERA**.  Investigators first advised  **MIRALDA** of his constitutional *Miranda* rights, in Spanish, and asked if he would speak to investigators, and **MIRALDA** agreed.  The interview was conducted in Spanish. **MIRALDA** told Investigators he was visiting the apartment and didn't live there.  On further questioning, **MIRALDA** said he did live at the Subject Premise but had only lived in Portland and at that location for 15 days and that he lived in the living room of the residence.  During the investigation Investigators learned **MIRALDA** moved into the Subject Premise on or about September 25, 2024.  When confronted with the discrepancy in the time he lived at the residence,

**Affidavit of Joshua Betonte**                                                                                    **Page 5**

MIRALDA agreed that he had lived there for 20 to 25 days. MIRALDA described being on vacation from California, but could not provide Investigators with the city in California that he came from. MIRALDA additionally said he worked as a remodeler, roofer, and general floor installer, but did not have a steady company that he worked for and could not provide a name of a company he worked for.

12. MIRALDA told Investigators he had never sold drugs in his life and knew nothing of the kilograms of fentanyl and thousands of dollars located within the Subject Premise. MIRALDA said none of the narcotics or money belonged to him. During surveillance performed on MIRALDA in the weeks prior to the execution of the search warrant, Investigators witnessed MIRALDA perform what appeared to be multiple hand-to-hand fentanyl sales. Later in the interview, MIRALDA stated that one of the roommates in the apartment, CUEVAS, was responsible for selling narcotics. MIRALDA said CUEVAS was the person responsible for selling the fentanyl in the apartment, and not MIRALDA. MIRALDA additionally described CUEVAS as being the "boss," and that MIRALDA had been present with CUEVAS as CUEVAS was selling fentanyl to customers. MIRALDA said he knew CUEVAS to live in Portland, Oregon for two to eight months.

13. MIRALDA stated he did not have a car but had access to a white sedan that belonged to a friend if he asked for permission. MIRALDA did not know what type of vehicle the sedan was. Investigators had routinely seen MIRALDA driving a grey Ford Fusion, bearing Oregon license plate 951PGG, in the course of conducting fentanyl sales and the vehicle was parked directly in front of the residence and was one of the vehicles subject to a federal search warrant. MIRALDA also told Investigators he had never lived at another location while being

**Affidavit of Joshua Betonte**                                                      **Page 6**

in Portland, Oregon from California.  Investigators witnessed **MIRALDA** living at two other residences, for periods of time, in the District of Oregon prior to moving to the Subject Premise.

14.     **MIRALDA** provided consent to review the contents of two cellular phones he identified as belonging to him, except for his phones' camera rolls.  While attempting to unlock the cellphones using **MIRALDA**'s fingerprint, both phones would not unlock.  It should be noted that the finger **MIRALDA** provided to unlock the phones was at his discretion, and Investigators did not attempt to use any other fingerprints.  When **MIRALDA** was asked what the pin codes were to the respective cellphones, **MIRALDA** stated he did not know the pin codes and could not unlock them that way.

15.     Investigators next advised **AGUILERA** of his constitutional *Miranda* rights, in Spanish, and he agreed to speak with Investigators.  The interview was conducted in Spanish. **AGUILERA** said he was from Tegucigalpa, Honduras and had lived in the United States since 2018.  **AGUILERA** said he primarily lived in Hayward, California up until three months ago when he moved to Portland, Oregon.  **AGUILERA** stated he came to the United States with the intention to provide a better life for his children in Honduras by working "legal."  **AGUILERA** told Investigators he worked in construction but ran out of money.  **AGUILERA** said he was approached by a man in Portland, who he only knew by a moniker, to sell drugs to make money and **AGUILERA** agreed.

16.     **AGUILERA** described being able to sell fentanyl to customers for $800 an ounce.  **AGUILERA** estimated that he sold 45-50 ounces during his time selling fentanyl in Portland, Oregon.  **AGUILERA** stated he did not sell ounces to every customer and would sell smaller denominations like an eighth (1/8) of an ounce.  **AGUILERA** said the money that was his, that was located in the Subject Premise, was from fentanyl sales.  **AGUILERA** told

**Affidavit of Joshua Betonte**                                                                 **Page 7**

Investigators he never had to pay for fentanyl and that he was only ever given it by unknown individuals with unknown contact information. When questioned about how **AGUILERA** could be provided over 45 ounces of fentanyl without ever having to pay for it, **AGUILERA** said he too thought it was strange and couldn't believe it.

17. **AGUILERA** was asked who he worked for and initially told Investigators that he lost his boss' contact information so he now worked independently. Later in the interview, **AGUILERA** provided the contact information for an individual he said established the fentanyl pickup locations for **AGUILERA**. **AGUILERA** told Investigators, however, that he decided he did not want to sell fentanyl anymore and informed his boss of his decision.

18. **AGUILERA** told Investigators that about three weeks ago he realized that selling fentanyl was wrong and wanted to move back to California to work "legally." **AGUILERA** apologized for being a fentanyl distributor and swore to never sell fentanyl again. **AGUILERA** also said he understood that he had to suffer the consequences of his actions.

19. **AGUILERA** said he knew **MIRALDA** and CUEVAS were drug dealers. **AGUILERA** stated **MIRALDA**, and possibly CUEVAS as well, took the juvenile male located at the Subject Premise to sell narcotics with them. Prior to the interview ending, **AGUILERA** said that not all of the fentanyl found belonged to him and that some of it belonged to **MIRALDA**.

20. I know that fentanyl is a Schedule II controlled substance and an extremely powerful synthetic opioid that is approximately 100 times more potent than morphine and 50 times more potent than heroin. I know that 2 milligrams of fentanyl can be a potentially fatal dose. I know that fentanyl traffickers regularly buy and sell bulk fentanyl powder. I know a typical user of fentanyl will either buy powdered fentanyl or counterfeit M30 pills manufactured

**Affidavit of Joshua Betonte**                                                          **Page 8**

with fentanyl that they will then burn it on a piece of tin foil and inhale the fumes.  Sometimes a user will simply ingest the pills or inhale the powdered fentanyl.  I know that fentanyl addicts on the street do not regularly stockpile large amounts of fentanyl but rather tend to buy a small amount of what they need and then resupply themselves when they run out.  I know that a user of powdered fentanyl will use it in quantities of less than 1/10th of a gram and will regularly buy it in amounts of between less than a gram up to a couple of grams at a time.  I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller qualities of a gram or less.  I know that people possessing kilograms of fentanyl powder do not possess the fentanyl for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.  I also know that individuals possessing containers of Super Mannitol in combination with fentanyl indicates that they are possessing fentanyl for purposes of further distribution.

## Conclusion

21.    Based on the facts stated above, I have probable cause to believe, and I do believe, that **MIRALDA** and **AGUILERA** committed the Target Offenses.  I therefore request that the Court issue a criminal complaint and arrest warrants for **MIRALDA** and **AGUILERA** for committing the Target Offenses.

///

///

///

**Affidavit of Joshua Betonte**                                                                                    **Page 9**

22.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and arrest warrants were all reviewed by Assistant United States Attorney (AUSA) Scott Kerin, and AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

_By phone pursuant to Fed R. Crim. P._
Joshua Betonte
Task Force Officer, DEA


Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at

__7:07__ a.m./p.m. on October __29__, 2024.

_____
HONORABLE STACIE F. BECKERMAN
United States Magistrate Judge

**Affidavit of Joshua Betonte**                                                        **Page 10**